**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BRENDA MOORE,<br><br>                         Plaintiff,<br><br>  vs.<br><br>TRI-CITY HOSPITAL FOUNDATION; TRI-CITY HEALTHCARE DISTRICT; DR. RANDALL BROWNING; DR. BETH ZELONIS-SHOU; DR. CARY R. MELLS,<br><br>                        Defendants. | CASE No. 13-CV-0341 JLS (MDD)<br><br>**ORDER (1) GRANTING MOTION TO PROCEED IN FORMA PAUPERIS; AND (2) DISMISSING COMPLAINT WITHOUT PREJUDICE**<br><br>(ECF No. 3) |

      Presently before the Court is Plaintiff Brenda Moore's ("Moore") motion to proceed *in forma pauperis* ("IFP"). (IFP, ECF No. 3). Moore, proceeding pro se, has filed a civil action against Defendants Tri-City Hospital Foundation, Tri-City Healthcare District, Dr. Randall Browning, Dr. Beth Zelonis-Shou, and Dr. Cary R. Mells (collectively, "Defendants") alleging, *inter alia*, violations of the Emergency Medical Treatment and Active Labor Act ("EMTALA") 42 U.S.C. § 1395dd, Title VI of the Civil Rights Act of 1964 ("Title VI"), 42 U.S.C. § 2000d, and unspecified provisions of the Health Insurance Portability and Accountability Act ("HIPAA"). Moore's claims arise from her visits to the Tri-City Hospital emergency department on January 25, 2012 and January 28, 2012, after she allegedly swallowed glass, causing pain and bleeding in her mouth and throat.

**MOTION TO PROCEED IFP**

A federal court may authorize the commencement of an action without the prepayment of fees if the party submits an affidavit, including a statement of assets, showing that she is unable to pay the required filing fee. 28 U.S.C. § 1915(a). Here, Moore attests that she has been unemployed due to injury for the past three years and that she has no assets or valuable property. (IFP 2–3, ECF No. 3). Moore also indicates that she relies on financial assistance from her children and her church to meet her expenses. (*Id.*) Based on the information provided, the Court finds that Plaintiff is unable to pay the required filing fee. Accordingly, Plaintiff's motion to proceed IFP is **GRANTED**.

**INITIAL SCREENING PER 28 U.S.C. § 1915(e)(2)(B)**

**1. Legal Standard**

Notwithstanding IFP status, the Court must subject each civil action commenced pursuant to 28 U.S.C. § 1915(a) to mandatory screening and order the sua sponte dismissal of any case it finds "frivolous or malicious," "fails to state a claim on which relief may be granted," or "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B); *see also Calhoun v. Stahl*, 254 F.3d 845, 845 (9th Cir. 2001) ("[T]he provisions of 28 U.S.C. § 1915(e)(2)(B) are not limited to prisoners."); *Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc) (noting that 28 U.S.C. § 1915(e) "not only permits but requires" the court to sua sponte dismiss an IFP complaint that fails to state a claim).

Before its amendment by the PLRA, former 28 U.S.C. § 1915(d) permitted sua sponte dismissal of only frivolous and malicious claims. *Lopez*, 203 F.3d at 1130. However, as amended, 28 U.S.C. § 1915(e)(2) mandates that the court reviewing an action filed pursuant to the IFP provisions of § 1915 make and rule on its own motion to dismiss before directing the U.S. Marshal to effect service pursuant to Federal Rule of Civil Procedure 4(c)(3). *See id.* at 1127; *Calhoun*, 254

F.3d at 845; *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997) (stating that sua sponte screening pursuant to § 1915 should occur "before service of process is made on the opposing parties").

**2. Analysis**

In her complaint, Moore alleges that Defendants denied her an appropriate medical screening in violation of EMTALA, discriminated or retaliated against her in violation of Title VI, and entered false information on her medical records in violation of HIPAA. (Compl. 1, ECF No. 1). She also alleges that Defendants negligently mis-diagnosed her and provided unreasonably poor medical care, as well as reneged on an oral promise to cover her medical expenses. (*Id.* at 3–4). The Court considers each of Moore's claims in turn.

*A. EMTALA Claim*

EMTALA requires that hospitals provide an "appropriate medical screening" to all individuals who request care from the emergency department. 42 U.S.C. § 1395dd(a). "[A] hospital satisfies EMTALA's 'appropriate medical screening' requirement if it provides a patient with an examination comparable to the one offered to other patients presenting similar symptoms, unless the examination is so cursory that it is not 'designed to identify acute and severe symptoms that alert the physician of the need for immediate medical attention to prevent serious bodily injury.'" *Jackson v. East Bay Hosp.*, 246 F.3d 1248, 1256 (9th Cir. 2001) (quoting *Eberhardt v. City of Los Angeles*, 62 F.3d 1253, 1257 (9th Cir. 1995)). "[F]aulty screening, in a particular case, as opposed to disparate screening or refusing to screen at all, does not contravene the statute." *Correa v. Hosp. San Francisco*, 69 F.3d 1184, 1192–93 (1st Cir. 1995). In short, EMTALA is an equal access statute that imposes no quality of care standards on hospitals.

Here, Moore's EMTALA claim fails because she alleges only negligence or faulty screening, not differential treatment on the basis of her uninsured status. According to Moore, when she sought care at Tri-City's emergency department on

January 25, 2012, Dr. Browning stood at her exam room door and told her that the glass that she swallowed "would come out one way or the other." (Compl. 1, ECF No. 1). Dr. Browning subsequently ordered a chest x-ray for Moore, which was completed; the x-ray did not show any glass, however, and he discharged Moore without further examination. (*Id.* at 2). Moore does not allege that she was turned away from the emergency room or that she was treated differently than other patients on the basis of her uninsured status. Although Moore contends that Dr. Browning knew that she did not have insurance, she does not allege any facts plausibly establishing that he provided a substandard screening because of her inability to pay. Accordingly, Moore's allegations fail to state a claim under the statute.

Moore also alleges that Dr. Browning violated EMTALA by refusing to call in a specialist to evaluate her. (Compl. 2, ECF No. 2). EMTALA does not require, however, that a hospital provide for evaluation by a specialist, nor does the statute entitle a patient to demand any specific method of screening. *See, e.g.*, *Herisko v. Tenet Healthcare Sys. Desert Inc.*, No. EDCV 13-00136-VAP (OPx), 2013 WL 1517973 at *4 (C.D. Cal. April 11, 2013). Consequently, these allegations also do not state a claim under EMTALA.

Moore's claims based on her subsequent visit to Tri-City's emergency department on January 28, 2012 are similarly inadequate. Moore alleges that Dr. Zelonis-Shou came to her exam room, gave her a dose of Maalox, and briefly examined her lower lip, without inspecting her mouth or the cut on her palate. (Compl. 3, ECF No. 1). Taking Moore's allegations as true, they indicate no more than negligent screening and do not suffice to create liability under EMTALA.

### B. Title VI Claim

Title VI bars discrimination on the basis of race, color, or national origin by any program or activity receiving federal financial assistance. 42 U.S.C. § 2000d. This statutory ban on discrimination applies to hospitals and other health care providers that receive federal funding. *See, e.g.*, *Bryan v. Koch*, 492 F. Supp. 212,

230 (S.D.N.Y. 1980), *aff'd* 627 F.2d 612 (2d Cir. 1980). To state a claim under Title VI for intentional discrimination, a plaintiff must allege facts plausibly establishing that, at the very least, an entity receiving federal assistance discriminated against her on the basis of race, color, or national origin. *See Baker v. Bd. of Regents of the State of Kan.*, 991 F.2d 628, 631 (10th Cir. 1993). Here, Moore does not allege any facts even remotely suggesting that she was discriminated against on the basis of race.[1] Accordingly, Moore's Title VI claim fails.

### C. HIPAA Claim

HIPAA does not create a private right of action for a patient to sue a health care provider.[2] *Webb v. Smart Document Solutions, LLC*, 499 F.3d 1078, 1081 (9th Cir. 2007). Accordingly, Moore's claim against Defendants for purported HIPAA violations also fails.

### D. State Law Negligence and Promissory Estoppel Claims

Moore also asserts state law claims against Defendants, arguing that they were negligent and that they failed to honor a verbal promise to cover her medical expenses by subsequently suing her in state court for $643.75. (Compl. 5, ECF No. 3). Moore's state law claims are barred by claim preclusion, however, because they were either raised, or could have been raised, in Moore's unsuccessful state court

---

[1] Moore's complaint states that Tri-City retaliated against her by reneging on its promise to cover her medical expenses and filing a counterclaim in her state court negligence action. (Compl. 5, ECF No. 1). Although a plaintiff may bring a claim for retaliation under Title VI, *see Peters v. Jenney*, 327 F.3d 307, 319 (4th Cir. 2003), Moore's allegations are wholly inadequate to support such a claim because they do not indicate that she engaged in any activity protected by Title VI, such as opposing, or complaining about, racially discriminatory practices.

[2] 45 C.F.R. § 164.526 sets forth a patient's "right to amend" her medical records under HIPAA. Pursuant to that regulation, a patient may request that her medical records be amended if she believes they contain false or misleading information. § 164.526(a)(1). A health care provider may reject such a request if it finds that the contested records are accurate and complete, or for other specified reasons. § 164.526(a)(2)(iv). Where a request to amend is denied, the provider must permit the patient to submit a written statement of disagreement and must append that statement to the record. §§ 164.526(d)(2), (4). This limited "right to amend," provided by regulation, is the only mechanism under HIPAA allowing a patient to address allegedly false or misleading information in her medical record.

negligence suit against Defendants, which she commenced on September 9, 2012.[3] (*See* Exhibit at 64–68, ECF No. 1-1).

## CONCLUSION

For the reasons set forth above, **IT IS ORDERED** that:

(1) Plaintiff's motion to proceed IFP is **GRANTED**.

(2) Plaintiff's complaint is **DISMISSED WITHOUT PREJUDICE** for failing to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b). Plaintiff is **GRANTED** forty five (45) days leave from the date this Order is filed in which to file an Amended Complaint which cures all the deficiencies of pleading noted above. Plaintiff's Amended Complaint must be complete in itself without reference to the previous pleading. *See* CivLR 15.1. Defendants not named and all claims not re-alleged in the Amended Complaint will be considered waived. *See King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987).

**IT IS SO ORDERED.**

DATED: June 6, 2013

Honorable Janis L. Sammartino
United States District Judge

---

[3] The Small Claims court, where Moore filed her initial state court action, is a court of limited jurisdiction; suits for more than $10,000 in damages cannot be heard there. Thus, it is unclear if Moore could have raised her federal claims in the prior action, given that she is seeking $50,000 in damages in the current litigation. As the Court is dismissing Moore's claims *sua sponte* for failure to state a claim, the Court does not address whether these claims are also barred by claim preclusion.